Good morning, everyone. We have four cases slated for this morning. With me, of course, is Judge Rundell, and from the area is Judge Nygaard. And we'll call up the first case in Re Application of BioMet, appellate number 17-3787. Counsel, may it please the Court. Before I begin, Your Honors, I'd like to reserve five minutes for rebuttal.  Thank you. As BioMet Switzerland pointed out in its briefs, this case isn't coming before the Court on a clean slate. Reus Medical previously subpoenaed through 1782 discovery applications BioMet Inc., BioMet Orthopedics, and Eschem Inc. What does that have to do with anything? What it has to do with anything, Your Honor, is the fact that these 1782 applications were before both this circuit and the Seventh Circuit. And both this Court and the... Well, they're not the same 1782. These are BioMets of Reus as compared to the other way around, correct? That is correct, and that is a difference. But if you look at the underlying analyses, both on the statutory factors and the intel factors, the findings that were made by the Seventh Circuit and this circuit with respect to, for example, receptivity, attempts to circumvent foreign proof gathering... Well, except Judge Roof was concerned about the fact that BioMet had been found guilty of misappropriating trade secrets. And that influenced her somewhat like the Four Pillars case, didn't it? Well, let me first address your question with respect to vis-à-vis BioMet. To be clear, BioMet Switzerland has never been found guilty of trade secrets misappropriation. All right, so the first stage had to do with the other entities. Correct, Your Honor. Okay, so with respect to BioMet Switzerland, the second stage of the proceeding is ongoing, where the trade secret claims will be being litigated. Judge Roof brought up the context of the prior finding as other BioMet entities in the context of stating that it would be, for example, intrusive or burdensome to allow BioMet Switzerland access to certain information that may be confidential information of her ex. And what I would say is to deny someone who is a defendant in the underlying German proceedings access to information that is absolutely critical to its defense in that foreign proceeding because an affiliate may have been found guilty of misappropriating trade secrets leads to an absolutely unfair result. If it's so critical to its defense, why did it wait so long to seek the discovery? With respect to BioMet Switzerland, again, BioMet Switzerland was the phase against BioMet Switzerland didn't even begin until the German Supreme Court refused to take the case. So that did not begin until 2016. Until when? 2016. What month? It was June 16, 2016 was when the German Supreme Court refused to take the cases, and then the second stage was allowed. June 16, and then the subpoena was, and the 1782 proceedings were initiated when? We filed our application on September 12, 2017. And, Your Honor, what I would point to is it wasn't until May 31, 2017 and June 20, 2017, when the sanctions motions were filed in the underlying ESCAM litigation, that through those public filings, BioMet Switzerland was able to learn, for the very first time of the existence of this, quite honestly, critical evidence to its defense. Through those public filings, we were able to learn that ESCAM had come into possession of evidence showing that Horaeus changed its co-polymer specifications various times and may, in fact, not even be using its purported trade secret specifications any longer. If this evidence is so critical, why can't the German authorities facilitate production? Other cases involving German proceedings discuss the fact that the German authorities, the German court or German authorities could facilitate production of this evidence if it's decided to do so. Has there been a request by BioMet Switzerland for the production of this evidence from its party opponent? No, there hasn't been. Why not? Because, Your Honor, I would disagree that there is an ability to obtain discovery in Germany. As Horaeus' own applications made clear. My question to you is, is there no mechanism? I'm not talking about pretrial discovery. I'm talking about a mechanism for the production. Because in some countries, you can't get pretrial discovery, but you can get the production during the trial proceedings. My question to you is, could there be a mechanism to obtain this evidence in the trial proceeding phase? The evidence we are seeking, my understanding is, no, there is not a manner for us to obtain this evidence. If Judge Roof's order is allowed to stand, BioMet Switzerland is in a position where it has an inability to access evidence that is critical to its defense. What do we do with the protective order that's in place in the Eskimo case? Well, BioMet Switzerland purposely filed this action in the Eastern District because Judge Roof was presiding over the Eskimo litigation, presided over the protective order. Well, let's talk about that. When that application was filed, there was a cover letter written. But the application did not include the local rules requirement of sort of identifying the proceeding it was associated with. The case gets assigned to a different district judge, the petition is granted, and it's only after the Eskimo lawyers realized this that it got filed. So I don't know that you can say that there was clear notice to the district court about this association between the requested material and the protective order Judge Rendell is asking about. Well, it was always, and I can tell you, it was always the intention that this go before Judge Roof, as we pointed out in the cover letter. And when Horaeus Medical sought to intervene, BioMet Switzerland didn't object. When Horaeus Medical asked to have the case transferred to Judge Roof, BioMet Switzerland didn't object. It was always anticipated. So to answer Judge Rendell's question, if you please, what do we do about the protective order where your request is essentially asking that that protective order be disregarded, be circumvented, and allow the production of evidence that has been explicitly precluded from the BioMet entities? I would say it's not circumventing the protective order. What it would be is district court judges always have the ability to modify a protective order. If the appropriate way to deal with this is to modify that protective order and impose restrictions on BioMet Switzerland's ability to use the documents, who may access the documents. Or she would appoint a master to review the documents, make sure they actually are privileged and, you know, confidential, if you will. I don't even know if that's necessary. Because in the other cases where 1782 discovery has come up, the parties have designated materials confidential. There have been protective orders in place. And there really haven't been many disputes as to whether certain types of information fall under or should they be protected as confidential. So the protective order here could be modified. And, in fact, Paragraph 26 of the protective order in the Eskin litigation specifically contemplates that it can be modified. But there wasn't really an effort to try to do that. There was a request here was to produce all the discovery that was disclosed in the EPA civil action. Well, in the application, Your Honor, BioMet Switzerland And there was a small line that says, or you can try to modify, give us less. But there wasn't an application to modify that protective order, was there? Correct. No, BioMet Switzerland chose to go the 1782 as opposed to intervening in the case of modifying the protective order. And that's kind of like the In Re Antitrust, line of board antitrust litigation. Where, in that case, the party intervened. And the opponent of the discovery said that instead of intervening to modify the protective order, this should have been addressed through a 1782 petition. And the court said, either way, intervention is appropriate. We're going to modify the protective order to allow access to the documents in United States litigation to be used overseas. But it's okay under 1782. It serves the purpose of 1782, which is broad discovery in aid of foreign litigation. Yeah, you may disagree with Judge Roof and her analysis. But how is this an abuse of discretion? You've got a pretty tough standard there. Your Honor, I would submit that when you are misapplying the intel factors and looking to factors that aren't faithful applications. She got some things wrong. She said it was a German criminal appeal. That's absolutely correct. And, in fact, that guided her, unfortunately, analysis. This focus on purported delay. If you look at it, Judge Roof, in her opinion, and it permeates Horaeus Medical's brief, is this concept of Biomed Switzerland seeking discovery late. And, in reality, we weren't seeking to use the information in an eight-year-old criminal appeal. Rather, we were looking to use the information, critical information, again, for the ongoing second phase of the German proceeding. That matter was ongoing when Biomed Switzerland filed this application. And it remains ongoing today. Thank you. Judge Nygaard, do you have any questions? No, thank you. I have none. Okay. Let me ask you. It's unusual that a law firm – I mean, it's not unusual for a law firm to get a subpoena. But for Eskam's lawyers to get the subpoena, you know, it's a total third party. It's very different. Do you have any authority for why or how that should be permissible? As we said in our briefs, you start from the underlying premise of subpoenas to law firms are acceptable. And there is nothing in the statutory factors of 1782 that precludes a subpoena to the discovery respondent's adversaries' counsel. But should there be a consideration as a discretionary factor as to whether the target of the subpoena is actually the owner or the possessor as compared to the temporary custodian of documents? Does that matter? It can matter in a given case. But where the problem came up here, Your Honor, is when there was an analysis of that issue, Judge Roof focused on hypothetical concerns of purported collusion instead of being faithful to intel and focusing on the facts of the given case. Here there is absolutely zero evidence. And, in fact, the evidence is to the contrary of any type of collusion. Okay. Thank you, counsel. Thank you. We'll hear on rebuttal. Thank you. Good morning. May it please the Court. Just briefly, the notion that this Section 1782 application rises and falls with Horace's prior Section 1782 applications is, I think, as Judge Rendell suggested, they're not one and the same. They're very different. Well, except in your prior proceedings. I mean, Judge Hayden, for our court, noted that you argued the broad policy provisions and policy reasons behind 1782 and its liberal construction. So kind of what's good for the goose is good for the gander. You got lots of information based upon that argument. And now you're trying to restrict them in having a defense. Yes, Your Honor. And I'll address that. But as Judge Posner noted in the Seventh Circuit opinion in the Indiana application, Horace Valumet at that time could have conditioned its production, its document production, on reciprocal broad discovery. It chose not to do that. Judge Posner doesn't help you. He said, do not deny access through quashing a subpoena. We have discovery tools, and you can figure out how to drill down and make this type of discovery available. He does indicate that narrowing the subpoena is preferable to quashing it. But Intel itself says, Justice Ginsburg says, that an overly broad and intrusive, here intrusion is more an issue than burdensomeness, I submit, may be quashed in its entirely or it may be narrowed. And that's under Intel. Overly intrusive about this 1782. Because this Section 1782 application, as the Court has noted, is directed to materials that Biomet is specifically precluded from reviewing under the trial court's protective order. By agreement, though. You know, and I know, that protective orders are very often drafted by parties, you know, kumbaya, holding hands, we're going to keep all this stuff private, and very often the courts rubber stamp it. Why should that be a preclusion from the court looking at the documents and seeing if they're properly confidential or protected? Or if I could ask, was this by consent? It was not. I thought there was a special master and great litigation before the entry of this order. Your Honor is correct. If you look at appendix page 384, you will see the special master's report and recommendation. This was a hard-fought issue. Eskim fought very hard to be able to share Horaeus's confidential information with its indemnitor, Biomet. And the special master noted the intense sensitivity of the information, the prior conviction in Germany for trade secret misappropriation, and he said no, and the district court adopted that recommendation. But Biomet wasn't in those proceedings. Doesn't Biomet have the ability and the right to have Judge Roof look at these knowing that Biomet's defense is dependent upon it? Does Biomet Switzerland have? Yes. It was not. Any Biomet entity is precluded presently from reviewing those documents. But Biomet was represented by the same attorneys that represent Biomet Switzerland here. But was it specifically understood at that time that Biomet Switzerland might have a need of those in terms of defense? I mean, it could be that Judge Roof looks at the documents or has a master look at the documents with that in mind and still says, sorry, you're not going to have access to these. But there might be a few documents in there that would be critical to Biomet's defense. Why doesn't Biomet have the ability to have that review undertaken? Well, first, I want to get to the residency issue in a bit. But to address that question, Biomet at the time could have said, look, we don't want any Biomet Inc. attorney to be able to review these confidential documents. Was Biomet Switzerland a party in that litigation? In the Eskim litigation? No. It was not. Neither was Biomet Inc. So what could, and you're saying Biomet could have said something about that? So Eskim was negotiating very hard for Biomet Inc.'s lawyers to be able to access this information. It could have made the alternative argument that even if Biomet Inc. shouldn't be able to access this information, Biomet Switzerland, another entity, should. It was, although phase two of the proceedings hadn't begun, it was already involved in those proceedings. That was 2014. And it didn't. It brought this on the eve of this hearing in 2017. And there is a real timeliness issue because the Frankfurt Court's opinion came down in 2014. So it was on notice that it was going to need this discovery if it really did need it. If I could talk about the residency issue briefly, because it is a threshold issue. It's a statutory requirement, right? There is absolutely no court of appeals in this country that has held that a company that has had a legal transaction here or litigation here and there's a law firm with its documents here as a result, is exposed to section 1782 discovery. But where is the residency requirement in the statute? The statute says... Is it found? Well, it says it can be directed to a person who resides or is found in the district. Right, and that's it. And hasn't the Supreme Court been pretty clear that we can't add anything more to those categorical elements of the statute but could consider your point maybe as a discretionary fact? Well, Your Honor, let's look at the intel factors themselves. They provide us with guidance here. Intel factor one says, is the person who is providing the discovery a participant in the foreign proceeding? In the Schmidt case, the Second Circuit said the person is not the law firm. The person is really the document owner, not the custodian. And that's exactly what Biomet has said in its briefing. The person here providing the discovery... I'm sorry, can you repeat what you said the first factor is? The first factor is, is the person who provides the discovery the object of the subpoena? Is it a participant in the foreign proceedings? And if so, can it provide that discovery? Could the discovery be sought there? I must be reading a different... I think what counsel did was he left the statutory three factors and moved into the intel discretionary factors. The point is that the analysis under intel, both with respect to intrusiveness and with respect to is the person a participant, focuses on the actual document owner. Okay, let's focus on that. I asked your officer a question. He was quite emphatic that there is no way in the German proceedings the document owner, who is a party in the German proceedings, would be compelled to produce material. That's absolutely false. Can you tell us what's your authority for saying? Yes. And I've seen other cases that have discussed it but without identifying the authority, that the German courts do have a mechanism to cause a party to produce material. German Rule 142, under the German Rules of Civil Procedure, allows a litigant in Germany to identify specific documents and ask the court to order its opponent to produce them. Right, you have to identify. So you say, I want the memo from John Smith to Susie Smith dated June 6th. And here, the only documents... How is that helpful? Well, it's helpful here because the only documents that were discussed with this panel, with this court, the only documents that were identified for Judge Roof are specific documents attached to a sanctions motion. Now, we pointed out that Bionet neglected to attach the special master's report and recommendation denying that motion, saying you've mischaracterized the documents. We did. But in any case, they're specific documents and they could be requested in Germany. There's no dispute. In the Third Circuit case in Horaeus, this court noted specific documents can be requested in Germany. Not before their application, not after, not until today. Never has Bionet Switzerland ever requested these sanctions documents from Horaeus in Germany, and they could. So that gets us to the subpoena itself, right? The subpoena itself is a lot broader, right? And... Yeah, the subpoena wants all the discovery produced in the civil action... Exactly. ...of the Eastern District of Pennsylvania. It wants every document that Horaeus has ever produced in the case, every deposition transcript, every discovery response, not once to Judge Roof, not once in its brief to this court, has Bionet ever justified the scope of that subpoena or offered to narrow it. But this court can do that. That's what Judge Posner said. There are discovery tools. The court can do that. The court can look at 4,000 documents or 200 documents and give them 10 or give them none. The court can, and certainly there are a couple of cases suggesting that it's preferable that the court do so. But there's no requirement that the court do so. As Intel says, unduly intrusive or burdensome requests may be rejected or trimmed, and that's under the Supreme Court's precedent. So Bionet has never, ever proposed a narrowing of this subpoena. It's never said, well, Judge, you're right, this could be overbroad, we'll narrow it. It's left it to the court. Is it up to the court, Judge Roof, to take it upon herself to go through all of Bionet's discovery requests and say, okay, well, these might be pertinent, but these aren't? There's certainly a vast realm of discovery produced in the Eskim case that's utterly irrelevant to what we just heard. Isn't there a problem with Judge Roof's opinion in that she clearly didn't understand or at least articulate what was going on? She talked about a German criminal appeal where Bionet Switzerland's liability or criminality had never been adjudged. She said that the documents from a law firm seem inherently improper in contravention of discovery limits. And saying that Bionet has been found to have misused Piraeus's proprietary information. Isn't a lot of her ruling based upon a misunderstanding of the facts? Well, I'm not sure that, Your Honor, the point is well taken in that there is some imprecision in her discussion of this foreign tribunal, and that may have been due to imprecision in the parties' briefings. She clearly thought there was something wrong going on here, and yet had Bionet Switzerland ever been found criminally or civilly liable? So, I don't think that this is amply fleshed out in the papers before this court by either side, but the allegations that are going forward against Bionet Switzerland are based on precisely the same allegations that form the basis of the criminal judgment, not against Bionet Inc., but against a specific individual who worked for Bionet. I don't think I heard the answer to the question. I'm sorry. Has Bionet Switzerland been adjudicated a misappropriator? No. No. That's what this is about, and certainly there are ongoing litigations across Europe. There's ongoing litigation here in the U.S. about various Bionet entities. But you clearly did not understand that Bionet was about to have to defend against certain allegations and that these documents, it believed, were important. No. I believe Judge Roof did understand, because that was Bionet Switzerland's brief to her, that these documents it was contending were important to its defense, whether in a criminal proceeding, a civil proceeding. They were saying these are important. But she weighed all of the factors, and I'd like to talk briefly about Intel Factor 3 here, because I think it really does get to the sense there's something rotten in Denmark. That factor doesn't look just to circumvention of foreign discovery rules. It says you have to consider whether the application violates or is an attempt to circumvent policies of a foreign country or the United States. And in this case, Judge Roof was terribly concerned about circumventing U.S. discovery policies, protections, the protection of confidential information, and in particular the protective order that she had entered. And the sense that this protective order was somehow happenstance is incorrect. It was a highly negotiated protective order.  It was adjudicated. It was adjudicated. But again, BioMet wasn't at that table. BioMet Switzerland was at that table. So there are lots of different BioMet entities, and BioMet is taking full advantage of different names for different ones. BioMet was represented by the same attorneys, and they have the same allegations were directed against BioMet Inc. as they are against BioMet Switzerland. Wait, are you saying ESCAM and BioMet were represented by the same attorneys? No, ESCAM is represented by Greenberg Charg, who's being paid by BioMet. But my point is BioMet wasn't at the table. No, it wasn't, but it was in full. It was not in dispute that it is in full discussion with ESCAM about this case. Well, Judge Roof can decide that. Yes. And say, listen, I entered a protective order before, and although BioMet needs these, I've gone through the documents, and I can't see anything there that they would have a right to get. Fine. Instead of quashing this opinion. Yes, if that issue were properly brought before it. But BioMet, ESCAM never said, well, if BioMet Inc. can't have these, at least let BioMet Switzerland have them. Well, it wasn't their, they're not the same party. They're not the same party, but the same counsel representing them. If this was a concern, they could have raised that. So is it your position, then, that the better avenue would have been to try to intervene in the civil action, EDTA civil action, and try to modify the protective order? I think at least the issues could have been raised in a way that they would have been before Judge Roof, rather than in a surreptitious Section 1782 application. I don't think 1782 is really surreptitious, but when was that protective order entered? The protective order was entered in 2014, I believe, perhaps 2015. And so, finally, that's the final, that third factor. The fact that this subpoena was directed to Harais's opponent's law firm. You have to ask yourself. Harais's local counsel is right here. They're Pennsylvania counsel. Why wasn't the application directed to Schrader, its local counsel? Why was it directed to Greenberg-Traurig, whose fees they were paying? Why didn't Biomet identify ESSCAM litigation as a related case? Why didn't they tell Judge Schmel that these documents that they were seeking were actually subject to a protective order under which they were not entitled to view them? Why didn't they immediately say, this case should be reassigned to Judge Roof, instead waiting for Harais to intervene and ask that? All of that, very, very rightly, gave Judge Roof a great deal of pause under Intel Factor 3. So, Intel Factor 1, Intel Factor 4, Intel Factor 3, all of them weigh in favor of the exercise of her discretion here not to allow this application. So, I just hit zero. Let me see if Judge Nygaard has any questions. Judge? All of my questions have been asked and answered. Thank you. Okay, great. Thank you. All right, counsel, thank you for your argument. We're here at the ceremony. I'm Rebecca. Counsel, can I ask, what happened before Judge Schmel? Was there a hearing or a proceeding, or was it just the application? Just the application and the order, Your Honor. And to answer the question that counsel posed, hypothetically, why didn't we subpoena local counsel for Harais Medical? Honestly, because we weren't sure local counsel had access and actual physical possession of the documents. Under the statutory requirements, you're subpoenaing someone who is in actual possession of the documents. That's why there was a subpoena directed to Greenberg Traurig and Feynman Crechstein. And as I said before, it was always intended that this matter would be before Judge Roof and Harais would have an opportunity to be heard, and that's actually what occurred here. So Harais Medical can talk about conspiracy theories, et cetera. The bottom line is they were heard. How do you respond to your adversary's comment about German Rule 142? I want to address that, Your Honor. I completely disagree. It's exactly like Judge Rendell pointed out. You have to be able to identify specific documents. So, for example, the January 5, 2010 contract between Acme Corporation and Beta Corporation covering the production of widgets. But your adversary said the documents at issue were attached to the sanctions motion, and couldn't you have gotten the equivalent of a privilege log or something like that? Then you could have had the identification and made your ID? One, I don't have. Those were all filed under seal. I don't have access to the documents. No, I'm not suggesting you could create it, but couldn't you have asked for can you give me the equivalent of a privilege log? Well, it's exactly like what Judge Posner brought up in the Seventh Circuit opinion. You can't. The requisite level of specificity is such that without access to the files, without having the documents. I understand that. My question is couldn't you have asked the possessor of the documents to create a privilege log and gotten the identifiers that you needed so that you could have made your application to the tribunal that's actually adjudicating the merits issue here? Could we have asked? We could have asked. I can't say I would have been physically prevented from asking. Would I have gotten the necessary information? I don't know, and I don't believe so. The bottom line is there is no way for us to get the type of discovery we need through the German rules. And all you have to do is look at Horace's prior 1782 applications to see that fact. They argued to the cows come home. And both this circuit and the Seventh Circuit agreed that there is no way to get the documents. Couldn't you, there were two aspects that you were concerned with, the continued use of certain copolymers and also there was one, but there were two things that you said came to light in May that caused you to want this discovery. Couldn't you have sought those specific aspects of the documents as compared to like a fishing expedition? If Your Honor is focusing on the scope of the subpoena request, my answer to that would be as follows. The subpoena could have been directed to documents regarding any specification changes for any of the purported trade secrets in the bone cements. And the second issue you were talking about was there is, there seems to be evidence that will show that Horace tested the Biomet bone cements. And those tests indicate that there are material differences between Biomet's bone cements and Horace's bone cements, which obviously undermines the position in the German proceeding. So a subpoena request could have been directed to all testing to Biomet's bone cement. The reason it was more encompassing, focusing on discovery, is because of the massive overlap between the allegations in the German proceeding, phase two, and the Eschem litigation. That the materials Eschem was seeking to prepare its defense are going to be relevant, almost by definition, to Biomet Switzerland's defense because there's such an overlap. If you look throughout the Eschem complaint, there's discussions ad nauseum about the German proceedings. I wanted to address the issue about the protective order and to make crystal clear. Before you do, Counselor. Yes. You argued that without these subpoenas, there's no other way you could obtain this material. Opposing counsel said that's false and cited to German Rule 142. I didn't understand your answer to Judge Schwartz's question about Rule, German Rule 142. Are you saying that does you no good at all? I would say it does me no good at all, Your Honor. I would point to the declaration of Wolfgang Witz that was submitted in support of our discovery application. To your point, what we're engaging now is a debate the courts have cautioned where there are hypothetical forays into foreign proceedings. Intel, the analysis, is supposed to go away from those types of thought processes. But with respect to the protective order, to be clear, no Biomet entity, Biomet Switzerland, Biomet Inc., Biomet Orthopedics is a party to or was involved in the negotiation of the protective order in the Eschem case. That was negotiated between Horaeus Medical and Eschem and entered by the court. To the extent that there was any request to share information with counsel for one of the Biomet entities, it was done by Eschem to help prepare Eschem's own defense. You can look at the appendix page that counsel cites, and it makes clear that Biomet had nothing to do with that protective order. All right, counsel, thank you very much. Thank you very much. Thank you for your arguments, and we'll take the matter under advisement.